UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RIDGE CORPORATION,**

      **Plaintiff,**

  v.

**ALTUM LLC,** *et al.***,**

      **Defendants.**

:

:

**Case No. 2:21-cv-5915**
**Judge Sarah D. Morrison**
**Magistrate Judge Elizabeth A. Preston Deavers**

## OPINION AND ORDER

This matter arises out of dispute between Plaintiff Ridge Corporation and Defendants Dominic Grandominico, Kyle Timothy Gaines, Greg Karst (the "Individual Defendants") and Altum, LLC over the alleged misappropriation of trade secrets in violation of federal and state law. It is before the Court on Defendants' Motion to Dismiss (ECF No. 24), to which Plaintiff responded (ECF No. 27), and Defendants replied (ECF No. 29).

For the reasons set forth below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

### I.    BACKGROUND

Plaintiff Ridge Corporation is a manufacturing and engineering company that specializes in thermoplastics and produces, among other things, the Dual Coated Film Product (the "Product"). (Compl., ECF No. 1, ¶¶ 9, 13–18.) The Individual Defendants were employed by Ridge until each resigned in 2018. (*Id.* ¶¶ 10, 27–30). On March 15, 2019, the Individual Defendants formed Altum, LLC,

which is also a manufacturing and engineering company that specializes in thermoplastics. (*Id.* ¶¶ 33–34; *see also* Altum Articles of Inc.,[1] ECF No. 1-7.)

At the center of this dispute is Ridge Corporation's Dual Coated Film Product, which is an apparatus and method for bonding two dissimilar materials using a bondable film that is coated with a chemical emulsion to facilitate adhesion. (Compl., ¶¶ 13–18.) The Product was invented by Gary Grandominico,[2] Raymond McDonald, and the Individual Defendants while each was employed by Ridge Corp. (*Id.*) On October 1, 2015, each of the inventors executed patent assignments granting Ridge Corporation exclusive rights to the Product, the patent application for it, and any "application derivatives." (*Id.* ¶ 23; *see also* Patent Assignment, ECF No. 1-2.) The next day, Ridge Corporation filed a patent application with the United States Patent and Trademark Office ("USPTO") for the Product. (Compl., ¶ 24.)

Ultimately, the patent application was denied for lack of invention, and Ridge Corporation allowed the patent application to lapse. (*Id.* ¶ 25; *see also* Rejection of Patent Application, ECF No. 24-1.) According to Ridge, abandoning the patent prosecution was a strategic decision to pursue trade secret protection for the continued development of the Product and its underlying technology, which is now used in almost all of its products. (*Id.* ¶ 25)

---

[1] The Court may consider matters beyond the complaint when deciding a motion to dismiss "when the document outside the complaint is referred to or attached to the pleadings and is integral to plaintiff's claims." *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F. 3d 327, 336 (6th Cir. 2007).

[2] Gary Grandominico is the President and Chief Executive Officer of Ridge Corporation and Defendant Dominic Grandominico's father.

Less than a year after the Individual Defendants resigned from Ridge Corporation, the Defendants filed a patent application with the USPTO for an invention called the "Structural Member Consisting of Dissimilar Polymer Materials." (*Id.* ¶¶ 36–37; Altum Patent Application, ECF No. 1-10, filed March 16, 2015.) According to Ridge, this invention is "wholly derivative" of the 2015-patent application and the Product's underlying technology—specifically, it alleges that the combination of functional components with other adhesion promoters in the Defendants' patent is a direct extension of the research performed by Karst for Ridge Corporation in March and April of 2018. (Compl., ¶¶ 36–40, 65.)

Following discovery of the Defendants' patent application, Ridge Corporation filed the instant suit.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

### III. ANALYSIS

#### A. Counts I and II—Misappropriation of Trade Secrets

Defendants argue that Ridge's misappropriation of trade secrets claims must be dismissed because the only information that Ridge identifies as a trade secret is the Product, and Ridge cannot prove that it took reasonable steps to protect that information due to the publicly available patent application that it filed in 2015. (Mot., ECF No. 24, PAGEID # 223–27.) In response, Ridge argues that, despite the information disclosed in the patent application, post-2015 developments to the Product are trade secrets and that this information is sufficiently identified in the Complaint. (Resp., ECF No. 27, PAGEID # 254–58.)

Ridge has brought misappropriation of trade secrets claims under the Defense of Trade Secrets Act (Count I), 18 U.S.C. § 1839, and the Ohio Uniform Trade Secrets Act (Count II), Ohio Revised Code § 1333. Because the acts are similar in scope and contain nearly identical definitions of statutory terms, the claims will be addressed together.

4

To state a claim for trade secret misappropriation, Ridge must first establish the existence of a "trade secret," defined as "all forms and types of. . . scientific, technical, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value. . . from not being generally known. . . [or] readily ascertainable through proper means." 18 U.S.C. § 1839(3); *see also* O.R.C. 1333.61(D).

Information that is generally known, publicly available, or readily ascertainable by skilled individuals in a plaintiff's field is not entitled protection as trade secret information. *See Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.*, No. 99-5003, 2000 WL 687681 (6th Cir. May 19, 2000); *see also Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 381 (6th Cir. 2022). Accordingly, Ridge is required to identify the information it claims is a trade secret "with specificity to separate the secret from general knowledge" or other forms of unprotected information. *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 980 (6th Cir. 2021); *see also Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021) ("[T]he subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.") (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (Cal. Ct. App. 1968)).

5

Ridge need not spell out the details of its trade secret to avoid dismissal, but "it must do more than allege that it had a secret." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (citations omitted). "Beyond those outer boundaries, however, deciding whether a plaintiff has sufficiently disclosed its trade secrets is a fact-specific question to be decided on a case-by-case basis." *Oakwood,* at 906 (citations omitted).

Ridge has given Defendants sufficient notice of the trade secret information at issue here. In addition to identifying the Product and its underlying technology as trade secret information (which may itself sufficiently communicate the boundaries of its claim) Ridge's factual allegations pinpoint the polyurethane to polypropylene bonding research conducted by then-employee Karst in March and April 2018 as fundamental to the patent application filed by Altum. (Compl., ¶ 39.)

Next, Ridge's factual allegations support that this information was protectable as a trade secret. Ridge identifies specific steps that it took to secure information about the Product and its continued development. (Compl., ¶¶ 19–22.) For example, the testing and other information underlying the development of the Product was limited to a small number of Ridge employees on the central development team. (*Id.* ¶ 20.) Ridge also assigned code names when discussing different development projects with those who assisted in testing but were not part of the central team.  (*Id.* ¶19.) In addition, Ridge Corporation's employee handbook prohibited employees from sharing any sensitive, proprietary, trade secret, or confidential information learned during the course of their employment; violations

6

of that policy could result in termination. (*Id.* ¶ 22; Ridge Corp. Employee Handbook, ECF No. 1-1.) Finally, Ridge demonstrates that the Product's underlying technology derives independent economic value, as it is used in almost all of its products. (Compl., ¶ 26.)

While Defendants are correct that the information disclosed in Ridge's 2015 patent application is not protectable trade secret information, *see Novak v. Farneman*, No. 2:10-CV-768, 2010 WL 4643002, at *4 (S.D. Ohio Nov. 9, 2010) (Marbley, C.J.), the existence of publicly disclosed information relating to the 2015-version of the Product does not render unprotected all future developments to the Product or innovations involving the disclosed information. *See Giasson Aerospace Sci. v. RCO Eng'g, Inc.*, 680 F.Supp.2d. 830, (E.D. Mich. 2010) ("'A trade secret can exist in a combination of characteristics each of which, by itself, is in the public domain, but the unified process, design, and operation of which, in unique combination, affords a competitive advantage.'") (quoting *3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001)); *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 713 (N.D. Ohio 2009) ("[W]hile, as a general proposition, there is no trade-secret protection for secrets that are disclosed in a patent application, numerous courts have allowed trade-secret protection for processes or specifications related to the patented device that are not disclosed in the patent.") (collecting cases).

Ridge must eventually prove that the misappropriated information is distinct from that disclosed in the patent, but the mere existence of publicly available

information relating to the Product is not a fatal flaw in its pleadings. *See Hickory Specialties*, 2000 WL 687681 at * 7 (holding that failure to distinguish "secret" information from that disclosed in a patent was fatal to trade secret claim at trial).

Because Plaintiff has identified trade secret information with specificity and alleged sufficient factual information to demonstrate it is protected as such, Defendants' motion to dismiss is **DENIED** as to Counts I and II.

### B. Count III—Breach of Patent Assignment

Defendants argue that Ridge has failed to state a claim for breach of patent assignment because their patent and patent application fall outside the scope of the rights assigned to Ridge Corporation in the agreement. (Mot., ECF No. 24, PAGEID # 227–29.) Ridge responds that the rights assigned to it by the Individual Defendants include, among other things, all patents and patent applications that derived the 2015-patent application. (Resp., ECF No. 27, PAGEID # 258–60.)

Under federal law, patents are treated as the personal property of the patentee whose rights in their patents and patent applications are assignable by written instrument. 35 U.S.C.A. § 261. Although claims that arise under federal patent law fall within the exclusive jurisdiction of federal courts, 28 U.S.C. § 1338, "state law governs contractual obligations and transfers of property rights, including those relating to patents." *Regents of Univ. of New Mexico v. Knight*, 321 F.3d 1111, 1118 (Fed. Cir. 2003) (internal quotations omitted). Thus, the Court applies Ohio law.[3]

---

[3] The forum state's choice-of-law rules determine which state's substantive law will apply. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir.

8

In Ohio, "[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St. 3d 321, 322, 474 N.E.2d 271, 272 (1984). When the language of a written contract is clear and can be given a definite legal meaning, a court need look no further than the writing itself to find the intent of the parties. *Westfield v. Galatis,* 100 Ohio St.3d 216, 219, 797 N.E.2d 1256, 1261 (2003).

In context of a patent assignment, the rights that are assigned must be "distinctly described" with any uncertainty resolved against the assignee. *Beidler v. Davis*, 72 Ohio App. 27, 34, 50 N.E.2d 613, 616 (1943). Nonetheless, "common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Shifrin v. Forest City Enters., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501 (1992). *See also id.* ("When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.")

In the patent assignment, the Individual Defendants assigned their "entire and exclusive rights, title and interest in the INVENTION and the APPLICATION (and APPLICATION DERIVATIVES)" to Ridge Corporation. (ECF No. 1-2, PAGEID

---

1996). Where, as here, "'neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.'" *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (Rice, C.J.) (quoting *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)).

9

# 93–96.) "APPLICATION DERIVATIVES" is described in the paragraph preceding the assignment clause:

> Ridge Corporation. . . is entitled to, and is desirous of acquiring, the entire and exclusive rights, title, and interest in the INVENTION and the APPLICATION (and all other applications and patents derived therefrom, such as continuing applications, in and for the United States, its territories, and all foreign countries ("APPLICATION DERIVATIVES")

(*Id.*) "APPLICATION" refers to the 2015-patent application for the Product and "INVENTION" refers to the "invented subject matter disclosed and/or claimed" in that application. (*Id.*)

Thus, Individual Defendants assigned their rights to "all other applications and patents derived" from the 2015-patent application. The common usage of "derive" is "to take, receive, or obtain especially from a specified source." *Derive,* MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/derive (last visited on Jan. 19, 2023). Ridge specifically alleges that Defendants' patent application is "wholly derivative" of the 2015-application. (Compl., ¶ 65.) Accordingly, Ridge's breach of patent assignment claim will not be dismissed.

Defendants seek a different result. They first argue that the assignment of applications derivative is expressly limited to "continuing applications."[4] (Reply, ECF No. 29, PAGEID # 288.) Not so. This argument ignores that "continuing

---

[4] A "continuing application" is a "[a] patent application that is filed while the parent application is pending and that carries on prosecution of some or all of the original application. Continuation, continuation-in-part, divisional, and reissue applications are all forms of continuing applications." *Patent Application*, Black's Law Dictionary (11th ed. 2019); *see also* 35 U.S.C.A. § 120; 37 C.F.R. § 1.53

10

applications" is preceded by the modifier "such as." Rather than indicating an exhaustive list, "such as" is "used to introduce an example or series of examples." *Such as*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/such%20as (last visited Jan. 19, 2023). Thus, "continuing applications" are simply an example of a type of application derivative that the Individual Defendants assigned to Ridge.

Defendants next argue that their patent application did not derive from the 2015-patent application because the USPTO determined that their patent application described an invention that was not taught, anticipated, or rendered obvious by any prior art. (Reply, ECF No. 29, PAGEID # 288–89.) While the opinion by USPTO is given great weight on issues of patentability, it is not determinative here. *See Kawneer Co. v. Pittsburgh Plate Glass Co.*, 109 F. Supp. 228, 233 (W.D. Mich. 1952). Instead, Defendants' argument raises a heavily fact-bound inquiry that is inappropriate for resolution at this stage.

Finally, Defendants argue that they did not convey any rights to Ridge because the information in the 2015-patent application was deemed unpatentable by the USPTO. (Reply, ECF No. 29, PAGEID # 289–90.) However, this argument ignores that the Individual Defendants also assigned to Ridge their rights to all subsequent "applications and patents derived" from the 2015-patent application. Viewing the complaint in the light most favorable to Ridge, USPTO's rejection of the 2015-patent application did not change the Individual Defendants' contractual obligations.

11

As such, Defendants' motion is **DENIED** as to Count III.

C.     **Count IV—Conversion**

Defendants argue that Ridge's conversion claim should be dismissed because it is preempted by state law. (Mot., ECF No. 24, PAGEID # 229–230.) In response, Ridge argues that it is permitted to plead in the alternative, so dismissal based on preemption is premature. (Resp., ECF No. 27, PAGEID # 260–61.)

Ohio Uniform Trade Secrets Act ("OUTSA"), preempts conflicting "tort, restitutionary, and other laws" that provide "civil remedies for misappropriation of a trade secret." O.R.C. § 1333.67(A). Although "[t]he Ohio Supreme Court has yet to speak to the scope of the OUTSA's preemption clause," the test applied by the Sixth Circuit is "whether the claims are no more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory claim for trade secret misappropriation." *Stolle Mach. Co., LLC v. RAM Precision Industries*, 605 Fed. Appx. 473, 485 (6th Cir. 2015) (internal quotation omitted); *see also Sal's Heating & Cooling, Inc. v. BERS Acquisition Co.*, 2022-Ohio-1756192, ¶ 50, N.E.3d 537, 547 (Ohio Ct. App. May 26, 2022) (applying the rule adopted in *Stolle*). If, however, "the state-law claim has a factual basis independent from the facts establishing the OUTSA claim, the portion of the claim supported by an independent factual basis survives preemption." *Stolle*, at 485. (internal quotation omitted). Finally, OUTSA preempts all claims based on misappropriation of information even if that information may not rise to the level of a "trade secret." *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012) (Rice, J.) (holding that a conversion claim is preempted on a motion to dismiss).

12

Here, Ridge's conversion claim is based on the same operative facts as its trade secrets claims. The fundamental assertion in each is that, throughout their employment, the Individual Defendants gained access to confidential and proprietary information underlying the development of the Product and that they used that same information to develop their own product after leaving Ridge Corporation. (Compl., ¶¶ 55–61, 68–72.) Because Ridge does not identify an independent factual basis for its conversion claim, the claim is preempted by OUTSA.

Ridge is correct that plaintiffs are generally permitted to plead in the alterative; however, courts routinely resolve OUTSA preemption issues on a motion to dismiss where, as here, no amount of discovery would expand the factual basis for the common law claim beyond the factual basis of the trade secrets claim. *See Cincom Sys., Inc. v. LabWare, Inc.*, No. 1:20-CV-83, 2021 WL 675437, at *5 (S.D. Ohio Feb. 22, 2021) (Marbley, C.J.) (collecting cases).

Accordingly, Defendants' motion is **GRANTED** as to Count IV and Ridge's conversion claim is **DISMISSED**.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 24) is **GRANTED** as to Count IV and **DENIED** as to Counts I, II, and III.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

13