UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RIDGE CORPORATION,

                **Plaintiff,**

      v.

ALTUM, LLC, *et al.*,

           **Defendants.**

:

      Case No. 2:21-cv-5915
      Chief Judge Sarah D. Morrison
      Magistrate Judge Elizabeth A.
      Preston Deavers

:

## OPINION AND ORDER

This is a commercial dispute with very personal implications. Ridge

Corporation is a central-Ohio thermoplastics company founded by Gary

Grandominico. Dominic Grandominico (Gary's son), Greg Karst, and Kyle Gaines

worked at Ridge until 2018; in 2019, they formed Altum, LLC. Ridge discovered in

late-2021 that Altum was competing in the thermoplastics arena and filed suit.

Dominic, Mr. Karst, and Mr. Gaines filed counterclaims. Defendants now move for

summary judgment. For the reasons below, the Motion is **GRANTED in part** and

**DENIED in part**.

## I.     FACTUAL BACKGROUND

### A.    The Parties

Ridge is a manufacturing and engineering company that specializes in

continuous fiber-reinforced thermoplastics (CFRTs). It uses CFRTs to create

structural sandwich panels that can replace similar panels made of heavier or more

expensive materials. Creating sandwich panels involves layering different kinds of

plastics together, then laminating them into the panel. Plastic sandwich panels are challenging to create because the plastics used in the panel are chemically difficult to bond. Manufacturers like Ridge engage in extensive research and testing to identify the best methods of bonding dissimilar plastics.

Dominic, Mr. Karst, and Mr. Gaines (the "Individual Defendants") all had jobs at Ridge that involved helping it find better ways to create sandwich panels. Dominic was Ridge's Director of Operations, Mr. Karst was the Product Development Engineer, and Mr. Gaines was the Director of Purchasing. Mr. Karst conducted research into bonding different kinds of plastics; the other two focused on customer interaction and operations. All three resigned from Ridge in 2018. Dominic remained a member of Ridge's Board of Directors for three years after leaving Ridge; he is a shareholder to this day.

### B.    The Patent Filings

Three patent filings are important to this dispute. Each addresses a method to bond chemically dissimilar plastics. They are: Mitsubishi's 2015 patent application for a "Laminate Containing Coated Polyester Film" (Mitsubishi Application, ECF No. 134-3); Ridge's 2015 patent application for a "Dual Coated Film Product" (Ridge Application, ECF No. 1-3); and Altum's 2021 patent for a "Structural Member Consisting of Dissimilar Polymer Materials" (Altum Patent, ECF No. 147-4).

The Mitsubishi Application describes a method of bonding fiber-reinforced polypropylene (PP) articles to polyethylene terephthalate (PET) film using a polyester film coated with a mixture of an adhesive agent and a cross-linking agent.

2

(Mitsubishi Application, ¶ 0013.) The adhesive agent is EIF-1312 (a chemical produced by Michelman) and the cross-linking agent is WS-700 (a chemical produced by Nippon Shokubai). (*Id.*, ¶¶ 0037, 0090.) The U.S. Patent Office ultimately granted the Mitsubishi Application. (ECF No. 134-2.)

Two months after the Mitsubishi Application was filed, Raymond McDonald, Jr., filed the Ridge Application. It also describes a method for bonding PP articles to dissimilar materials using a PET film coated in a chemical treatment. (*Id.*, ¶ 0012.) The Ridge Application does not specify what chemicals are used, but Ridge asserts that the chemical treatment (and not the PET film to which it is applied) is the "key element[] in the technology." (Compl., ECF No. 1, ¶ 15.) The day before the Ridge Application was filed, the Individual Defendants executed Patent Assignments purporting to assign their rights in the Dual Coated Film Product to Ridge "for good and valuable consideration." (ECF No. 1-2.) The U.S. Patent Office denied the Ridge Application, and Ridge permitted it to lapse.

Finally, in 2021, Altum successfully applied for the Altum Patent. The Altum Patent describes a sandwich panel consisting of a foam core sandwiched between fiber-reinforced thermoplastic skins. The skins are bonded to the foam core using only a chemical mixture (called a "crosslinking nanolayer") that is sprayed directly onto the plastics, rather than onto a carrier film.

### C. The Dispute

After filing the Ridge Application, Ridge continued its work on bonding chemically dissimilar plastics. In 2016, Ridge was experimenting with ways to create sandwich panels from a PET foam core and PP composite skins. After trying

and failing to bond the PET foam core directly to the PP skins, Ridge began to use a PP film called 903J between the layers to create the bond. By 2018, Ridge grew dissatisfied with the PET foam core's performance, and began using a PP foam core in its sandwich panels.[1]

During that time, Mr. Karst continued work on bonding dissimilar plastics. In April 2017, he reached out to Nippon Shokubai to request a sample of WS-700, explaining that he was looking for ways to improve adhesion to PET film. The following year, while working on a different project, Mr. Karst emailed Michelman searching for chemicals that would "increase the compatibility of various fillers with the [PP] matrix." A Michelman representative suggested ME91735. At some point after receiving ME91735 in Spring 2018, Mr. Karst combined it and WS-700 in a spray bottle for the purpose of developing a field repair patch from PP film to PET film. He quickly discontinued that research, after Gary told him the method was ill-suited for a field repair.

After leaving Ridge, the Individual Defendants eventually developed a mixture of WS-700 and ME91735 to bond PP skins directly to PET foam cores. That success comprises the technology in the Altum Patent.

In this lawsuit, Ridge asserts that Mr. Karst's 2017–18 research was integral to the "proprietary information underlying the development" of the Dual Coated Film Product, and it claims that the information gleaned from that research was

---

[1] Ridge produced fewer than ten sandwich panels with PET foam cores before switching to a using a PP foam core. (ECF No. 127-1, 39:1–3.) Ridge would not produce a sandwich panel with a PET foam core again until 2023. (*Id.*, 48:1–13.)

wrongfully stolen by Defendants to develop and patent their "Structural Member
Consisting of Dissimilar Polymer Materials." According to Ridge, the technology
comprising the Altum Patent is "wholly derivative" of the Ridge Application—and
represents research Mr. Karst undertook while a Ridge employee.

After discovering the Altum Patent, Ridge removed Dominic from its Board of
Directors and filed this suit.

## II.    PROCEDURAL BACKGROUND

In the final days of 2021, Ridge filed a Complaint asserting the following
claims:

| | | |
|---|---|---|
| Count I: | Misappropriation of Trade Secrets (Federal) | |
| | Against All Defendants | |
| Count II: | Misappropriation of Trade Secrets (Ohio) | |
| | Against All Defendants | |
| Count III: | Breach of Patent Assignment | |
| | Against Dominic, Mr. Karst, and Mr. Gaines | |
| Count IV: | Conversion | |
| | Against All Defendants | |
| Count V: | Breach of Fiduciary Duty | |
| | Against Dominic | |
| Count VI: | Conspiracy | |
| | Against Dominic, Mr. Karst, and Mr. Gaines | |

(ECF No. 1.)

After Defendants moved to dismiss Ridge's Complaint (ECF No. 24), this
Court dismissed only Count IV (Conversion). (ECF No. 55.) Defendants then filed
an Answer and Counterclaim, asserting two claims against Ridge:

| | | |
|---|---|---|
| Counterclaim I: | Books and Records | |
| | By Dominic | |

Counterclaim II:    Indemnification
                    By Dominic, Mr. Karst, and Mr. Gaines

(Countercl., ECF No. 65.)

Defendants now move for summary judgment on all remaining claims and counterclaims. (Mot., ECF Nos. 134 (redacted) and 135 (sealed).) Ridge responded in opposition (Resp., ECF Nos. 147 (redacted) and 158 (sealed)) and Defendants replied (Reply, ECF No. 156). The motion is thus ripe for consideration.

## III.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.

6

1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## IV.   ANALYSIS

### A.   Counts I and II: Misappropriation of Trade Secrets

Ridge first asserts that Defendants misappropriated its trade secrets in violation of the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61, *et seq.* ("OUTSA"), and the Federal Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.* ("DTSA"). "Courts consider these state and federal law claims together because the definition[s] and requirements of the OUTSA and DTSA are essentially the same." *Equity Res., Inc. v. Thoman*, 682 F. Supp. 3d 707, 726 (S.D. Ohio 2023) (Sargus, J.) (citation omitted).

To prevail on a trade secret misappropriation claim, a plaintiff must first establish the existence of a trade secret. *Id.* at 723–24, 726. A trade secret is, above all else, a secret—but, more specifically, it is "information that the owner seeks to protect as confidential and that has economic value from not being publicized." *Id.* (citation omitted); *James B. Oswald Co. v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024) (explaining that "under both [the OUTSA and DTSA], [trade secret] information must have independent economic value, and the company must take reasonable steps to keep it secret"); *see also* 18 U.S.C. § 1839(3), Ohio Rev. Code § 1333.61(D). It follows, then, that information publicly disclosed in a patent application is not

7

entitled to trade secret protection. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 409 (6th Cir. 2013) (citing *Rogers Indus. Prods. Inc. v. HF Rubber Mach., Inc.,* 936 N.E.2d 122, 126 (Ohio Ct. App. 2010)). Nor is information "of common knowledge or use in the trade." *Wiebold Studio, Inc. v. Old World Restorations, Inc.*, 484 N.E.2d 280, 284 (Ohio Ct. App. 1985). A plaintiff bears the burden "to prove that information has trade secret status." *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 985 (N.D. Ohio 2008).

And so, what is the supposed trade secret Ridge seeks to vindicate? The answer to this question is necessarily moored to the pleadings. Ridge alleges in its Complaint that Defendants misappropriated the "confidential and proprietary information underlying the development of the Dual Coated Film Product[.]" (Compl, ¶¶ 48, 56.) But, after discovery, Ridge proposes that eleven pieces of information comprise the alleged trade secret:

1.   Ridge's decades-worth of testing and know-how about how to work with CFRTs, composites, films, primers, and coatings, including unique combinations of those materials;

2.   Ridge's institutional knowledge on available pricing among a large cross-section of vendors to make products in the CFRT industry;

3.   The emulsions Karst was testing at Ridge for purposes of bonding dissimilar polymers as part of Ridge's longstanding confidential research and development;

4.   Identities of Ridge's suppliers and vendors for materials, which were treated as confidential while Defendants worked at Ridge and were given code names, as well as Ridge's institutional knowledge about pricing, product attributes, and material compatibilities;

8

5.     Ridge's machine run parameters, equipment design, equipment technology, and equipment tensions which Defendants used to reverse-engineer a press to allow Altum to compete against Ridge;

6.     Ridge's raw material knowledge gained from more than a decade of testing and experimentation;

7.     Ridge's pellet geometry and design;

8.     Ridge's institutional knowledge regarding supplier-specific yields;

9.     Performance properties of PET tapes and polypropylene tapes;

10.     Ridge's institutional knowledge regarding lamination technologies for use with specific materials; and

11.     Ridge's institutional knowledge regarding the performance of a wide range of adhesives for implementation with CFRTs.

(Resp., 1–2 (copied as written with the addition of numbering).) Because Ridge cannot add claims at this late stage of litigation, only Item 3 is at issue.[2]

Items 2 and 4 relate to Ridge's suppliers and vendors. As explained in four prior Orders (*see* ECF Nos. 97, 104, 111, 155), Ridge has not demonstrated how information about its suppliers/vendors is relevant to the misappropriation alleged.

Items 1 and 5–11 relate to the creation of sandwich panels—albeit, to the acquisition of materials for sandwich panels, the construction of sandwich panels, and the technical challenges posed by sandwich panels. But the Complaint does not allege that Defendants misappropriated trade secrets relating to the creation of a sandwich panel *generally*—instead, it alleges that Defendants misappropriated

---

[2] "Parties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019).

Ridge's technology for bonding plastics *specifically*.[3] That bonding technology is touched on only in <u>Item 3</u>. There, Ridge asserts that Mr. Karst, in the course of his employment with the company, discovered a method (the "Method") to bond PP skins to a PET foam core by spraying them with a mixture of WS-700 and ME91735 (the "Chemicals").

Having discerned the information at issue, the Court now asks whether a jury could find, based on the evidence in the record, that it constituted Ridge's protectable trade secret. Even viewing the evidence in the light most favorable to Ridge, the answer is no.

As part of his job at Ridge, Mr. Karst researched ways to bond PP to PET. His research included experiments with the Chemicals, which he learned of and acquired after reviewing the Mitsubishi Application. He combined the Chemicals in various ratios in the manner described in the Mitsubishi Application. And eventually, the Individual Defendants were successful at bonding PP skins to PET foam cores using only the Chemicals. But there is no evidence that Mr. Karst found success using the Chemicals while at Ridge.

What's more, the record indicates that Ridge took no steps to keep the alleged trade-secret a secret from other Ridge employees. To the contrary, Kyle Ginaven

---

[3] The Complaint references sandwich panels only once: as one of many possible applications for the Dual Coated Film Product. (Compl., ¶ 26.) It simply does not allege that Defendants misappropriated Ridge's technology for creating sandwich panels. The Complaint alleges that Defendants misappropriated Ridge's technology for bonding dissimilar materials. (*See id.*, ¶¶ 14, 15, 39.)

testified that Mr. Karst's research was the subject of casual gossip.[4] (ECF No. 141-2, 31:3–10; ECF No. 127-1, 196:3–11.) And Mr. Karst stored the Chemicals in an unlocked cabinet (accessible to ten other employees) labeled with their correct names and ratios. (ECF No. 127-1, 187:18–23.) The Chemicals sat in that cabinet, unused, for four years. (*Id*.) Ridge had all but abandoned its research into making sandwich panels with PET foam cores, focusing its efforts instead on sandwich panels made with PP cores. (*See id*., 39:1–3, 48:1–11.)

Even if Ridge had taken steps to keep information about the Chemicals secret, trade secret law does not prohibit the Individual Defendants from using common-use information about thermoplastics and sandwich panels, or the information disclosed in the Mitsubishi Application, even if they first learned that information while employed at Ridge. *Accord Wiebold Studio*, 484 N.E.2d at 284 ("A person who enters employment as an apprentice and leaves it as a master cannot be enjoined from using his enhanced skills and knowledge in future employment.). The evidence is undisputed that WS-700 was disclosed in the Mitsubishi Application and that Mr. Karst used ME91735 at the suggestion of a Michelman representative.

Because Ridge has failed to establish the existence of a trade secret, the Motion is **GRANTED** as to Counts I and II.

---

[4] The substance of the gossip (that Mr. Karst had bonded PP skins to a PET foam core) is inadmissible hearsay when offered to prove that the Method was successfully developed while Mr. Karst was a Ridge employee. *See* Fed. R. Evid. 802.

### B.     Count III: Breach of Patent Assignment

Ridge next asserts that the Individual Defendants violated their obligations in the Patent Assignment, resulting in a breach of that contract. The Individual Defendants argue that the Patent Assignment was not binding because it was not supported by consideration. The Court agrees.

Under Ohio law, a breach-of-contract claim requires the plaintiff to prove that (i) a contract existed, (ii) the defendant failed without legal excuse to perform when performance was due, and (iii) the plaintiff was damaged by that failure. *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018). The essential components of a contract include "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Williams v. Ormsby*, 966 N.E.2d 255, 258 (Ohio 2012) (internal quotation and citation omitted). Although courts cannot "inquire into the adequacy of consideration, . . . whether consideration exists at all is a proper question for a court." *Id.* at 259. "To constitute consideration, the benefit or detriment must be bargained for. Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Carlisle v. T & R Excavating, Inc.*, 704 N.E.2d 39, 43 (Ohio 1997) (internal quotation and citations omitted).

Ridge makes three arguments for a finding that the Patent Agreement was supported by consideration: First, the Individual Defendants assigned their patent interests in exchange for access to Ridge's patent prosecution resources; Second,

they assigned their patent interests in exchange for continued employment with Ridge; and third, the Patent Assignment was ancillary to the employee handbook.

The first and second arguments are similar. In each, Ridge asserts that the Patent Assignment was supported by a benefit (patent prosecution resources and continued employment) given in exchange for the Individual Defendants' rights in the patent application. Those benefits could support a contract. *See, e.g., Memorylink Corp. v. Motorola Sols., Inc.*, No. 08 C 3301, 2013 WL 4401676, at *7 (N.D. Illinois Aug. 15, 2013) ("The provision of patent prosecution resources can constitute consideration for the assignment of patent rights."); *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 863–64 (S.D. Ohio 2003) (Rice, J.) (finding that a promise of continued employment may constitute consideration, even in the at-will employment context). But Ridge offers no evidence that they were bargained-for benefits to support <u>*this*</u> contract. The Patent Agreement says only that the Individual Defendants assigned their rights in the patent application to Ridge "[f]or good and valuable consideration[.]" (See ECF No. 1-2, PAGEID # 95.) That Ridge did handle patent prosecution and did continue to employ the Individual Defendants does not transform those acts into consideration when there is no evidence that either was "a <u>bargained-for</u> benefit to the promisor or detriment to the promisee." *Carlisle*, 704 N.E.2d at 44 (emphasis added). *Cf. Memorylink*, 2013 WL 4401676, at *7 (concluding that record evidence demonstrated that assignors bargained for assignee to prosecute patent application in exchange for joint ownership); *Raasch*, 254 F. Supp. 2d at 864 (finding consideration when plaintiff

13

testified that he "understood that the only way to avoid [defendant's arbitration policy] was to resign from the company").

Finally, Ridge argues that the Patent Assignment does not need independent consideration because it was ancillary to another valid contract: the Ridge employee handbook. However, Ridge's employee handbook does not address ownership of property developed or learned at Ridge, let alone require employees to assign interest in such property to Ridge. *Cf. Voith Hydro, Inc. v. Hydro West Group, Inc.*, No. C 96 1170, 1997 WL 154400, at \*6 (N.D. Cal. Mar. 26, 1997) (finding that a patent assignment was ancillary to an invention agreement when the invention agreement required the employee to assign their patent rights). And Ridge's employee handbook, by its own emphatic terms, is "not a contract[.]" (ECF No. 1-1, PAGEID # 26 (emphasis in original).)

The Motion is thus **GRANTED** as to Count III.

### C.    Count V: Breach of Fiduciary Duty

In Count V, Ridge asserts that Dominic breached his fiduciary duties to the company. "Under Ohio law, a breach of fiduciary duty arises if there is: '(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom.'" *L.F.P.IP, LLC v. Hustler Cincinnati, Inc.*, 533 F. App'x 615, 623 (6th Cir. 2013) (quoting *Thomas v. Fletcher*, No. 17–05–31, 2006 WL 3702699, at \*2 (Ohio Ct. App. Dec. 18, 2006)). It is undisputed that, when he was a Director, Dominic owed Ridge fiduciary duties. Ridge asserts that Dominic violated those duties when he formed a competing company and misappropriated Ridge's confidential and proprietary information;

14

Dominic disagrees. The dispute is of no moment, however, as Ridge fails to put forth any evidence that Dominic's alleged breach proximately caused damage to the company. Ridge argues that it "lost customers to Altum."[5] (Resp., 30 (citing ECF No. 126 at 111:5–7, 125:23–126:3).) But Ridge fails to connect these supposed losses[6] to Dominic's conduct while a Director.

The Motion is **GRANTED** as to Count V.

### D.       Count VI: Conspiracy

Finally, in Count VI, Ridge asserts that the Individual Defendants conspired to misappropriate Ridge's trade secrets and conspired to compete in violation of Dominic's fiduciary duties. "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998). Because Ridge's misappropriation and fiduciary duty claims fail, so too does their civil conspiracy claim.

The Motion is **GRANTED** as to Count VI.

### E.       Counterclaim I: Inspection of Books and Records

In the first Counterclaim, Dominic asserts that Ridge violated Ohio law requiring corporations to allow shareholders to inspect the company's books and

---

[5] Ridge also argues that it is "now forced to compete against its own technology in the niche CFRT market." (Resp., 30.) The Court has already concluded that Ridge's technology was not a trade secret. (*See* § IV.A., *supra*.)

[6] The deposition transcript cited in support of this argument references one Altum customer. But the Court is unable to discern the nature of the alleged loss. Nothing in the record establishes whether that company was a prior Ridge customer, a prospective Ridge customer, or simply a possible customer in the broader market for CFRT products.

records. Ohio Rev. Code § 1701.37(C). In particular, Dominic alleges that Ridge failed to provide him with books and records that he properly demanded in an October 7, 2022 letter (Demand, ECF No. 65-1).

The Demand requested copies of: Ridge's corporate governance documents; documents pertaining to the Company's records of accounts, including financial audits; information provided to any financial institution in the prior three years for the purpose of securing loans, credit facilities, letters of credit, revolving credit lines, or other financial transactions; and company valuations completed at Ridge's request. Ridge concedes that it limited Dominic's access to these records because of his association with Altum (*see* Resp., 31), but does not argue that the Demand's stated purpose was unreasonable or improper. Nothing in the law permits Ridge to limit a shareholder's access to records that were requested for a reasonable or proper purpose. *See No-Burn, Inc. v. Murati*, C.A. No. 25495, 2011 WL 5188063, at *4 (Ohio Ct. App. Nov. 2, 2011) ("Only where the shareholder's stated purpose is unreasonable or improper on its face may the corporation justifiably refuse the request to inspect.") (further citation omitted).

Dominic's Motion is **GRANTED** as to Counterclaim I. Ridge is **ORDERED** to comply with the requests made in the October 7, 2022 letter.

### F.      Counterclaim II: Indemnification

Finally, the Individual Defendants assert a claim for indemnification under Ohio law and Ridge's Amended and Restated Code of Regulations (ECF No. 134-8). Both allow a company to indemnify a director or employee who is sued by reason of being a director or employee. *See* Ohio Rev. Code §§ 1701.13(E)(1)–(3); Ridge Code of

16

Regs., §§ 4.1–4.3. But both except suits <u>brought by the company</u>. *See* Ohio Rev. Code § 1701.13(E)(1)(limiting indemnification to actions "other than an action by or in the right of the corporation"); Ridge Code of Regs § 4.1 (same). Because the Individual Defendants state no legal basis for their indemnification claim, the Motion is **DENIED** as to Counterclaim II and the claim is **DISMISSED**.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Defendants are entitled to judgment as a matter of law on all of Ridge's claims and on Dominic's counterclaim for inspection of corporate books and records; the Individual Defendants' counterclaim for indemnification is **DISMISSED**.

The Clerk is **DIRECTED** to enter final judgment accordingly.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**